# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>STEPFONZ CAMPBELL,<br><br>      Defendant. | Case No. 17-CR-7-JPS<br><br><br>**ORDER** |

**1. BACKGROUND**

In June 2020, Defendant filed a motion for compassionate release and the Court referred this matter to Federal Defender Services ("FDS"). (Docket #36, #37). Shortly thereafter, FDS informed the Court that it would not be filing a supplement on Defendant's behalf. (Docket #38). The Court ordered the Government to respond to Defendant's motion. (Docket #39). After the Government responded, Defendant filed two supplements to his motion. (Docket #41, #42, #43). The Court has reviewed these submissions and will deny Defendant's motion for compassionate release.

**2. FACTS**

In early December 2014, Defendant and his wife set fire to two occupied apartment buildings in Milwaukee to retaliate against their former landlord. (Docket #25 at 4–9, #41 at 1). Specifically, on December 1, 2014, they set fire to "rubbish" in a common area, as well as to carpeted area inside a locked apartment. (Docket #25 at 4, #41 at 1). The next day, Defendant and his wife went to an eight-unit apartment building, where they splashed the hallway with gasoline and lit it on fire. (Docket #25 at 5,

8, #41 at 1–2). Ultimately, three tenants and three firefighters were hospitalized as a result of the second fire. (Docket #25 at 5).

In January 2017, Defendant was charged by indictment with one count of Arson of Building and another count of Arson of Building Resulting in Injury. (Docket #1, #25 at 3). He pleaded guilty to the second count, and this Court sentenced Defendant to 92 months of imprisonment, which is above the statutory mandatory minimum sentence of 84 months of imprisonment. (Docket #18, #30 at 1–2, #31 at 1). Defendant's expected release date is August 21, 2023.[1] His term of imprisonment is to be followed by five years of supervised release. (Docket #30 at 3–4).

Defendant is a 40-year-old male.[2] In his motions and supplements for compassionate release, Defendant claims to suffer from high blood pressure, nerve damage, a "low" immune system, and breathing problems. (Docket #36 at 2). Additionally, Defendant has had surgery on his back, neck, and leg. (*Id.*) In one of his supplements, Defendant states that he has been diagnosed with hypertension and obesity and that he tested positive for COVID-19. (Docket #43 at 2). He previously sent the Court a letter, explaining that he was recently tested for antinuclear antibodies ("ANA"), and provided the Court with his test results and a summary regarding ANA testing from the Mayo Clinic. (*See* Docket #42, #42-1 at 3–5).

Lastly, Defendant also argues that the Court should grant him compassionate release because he needs to care for his mother. (Docket #43 at 4). According to Defendant, she has had multiple surgeries since his incarceration and now needs a major back surgery, which, if it does not go

---

[1] Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited May 3, 2021).

[2] *Id.*

well, could leave her paralyzed. (*Id.*) Defendant avers that she is waiting to get this surgery until his release because he is the only person available to help her. (*Id.*)

Defendant is currently incarcerated at U.S. Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield").[3] As of May 3, 2021, there are no active inmate or staff COVID-19 cases at MCFP Springfield.[4] Further, MCFP Springfield reports that 366 inmates have been fully vaccinated for COVID-19.[5] The Probation Department informed the Court that, as of December 2020, Defendant met with doctors and "declines all vaccinations." It is against this factual background that the Court evaluates Defendant's motion for compassionate release.

3. **LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions

---

[3]*Id.*

[4]Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited May 3, 2021).

[5]*Id.*

for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, Case No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020). Yet, this Court will evaluate prisoner-initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, Case No. 1:08-cr-00125-TWP-DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care

within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii).

With regard to a defendant's family circumstances, the policy statement explains that "[t]he death or incapacitation of the caregiver of the defendant's minor child or children" constitutes an extraordinary or compelling reason. *Id.* § 1B1.13 n.1.(C)(i). Further, an extraordinary and compelling reason exists if a defendant's spouse or registered partner is incapacitated and the defendant is the "only available caregiver" for his or her spouse or partner. *Id.* § 1B1.13 n.1.(C)(ii).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A). Pursuant to § 3553(a), when determining the sentence to be imposed, the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment. Lastly, the Court must evaluate whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G.§ 1B1.13(B)(2).

4. **ANALYSIS**

First, the Government concedes that Defendant exhausted his administrative remedies. (Docket #41 at 5); *see Gunn*, 980 F.3d at 1179 ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it.") (internal citations omitted). The Court next determines whether

Defendant has an extraordinary and compelling reason warranting his release.

To be sure, the outbreak of COVID-19, together with a defendant's underlying medical conditions that place the defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, Case No. 13-CR-101-JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). Here, Defendant suffers from at least one condition, hypertension, which, according to the Centers for Disease Control and Prevention ("CDC"), "possibly . . . can make [one] more likely to get severely ill from COVID-19."[6] Notably, Defendant's medical records indicate that he manages his hypertension with medication. (Docket #41-3, #41-4 at 8). *See United States v. Melgarejo*, Case No. 12-cr-20050-JES-DGB, 2020 WL 2395982, at *4 (C.D. Ill. May 12, 2020) (finding that defendant had not met his burden to establish an extraordinary reason justifying release because he had not alleged that his hypertension was "particularly severe or not controlled with medication."); *United States v. Broomfield*, Case No. 17-cr-30018, 2020 WL 2200432, at *3 (C.D. Ill. May 6, 2020) (finding that defendant's hypertension, which defendant managed with medication, was not an extraordinary and compelling reason warranting release). Moreover, according to both Defendant and the Probation Department, Defendant already tested positive for COVID-19 and was asymptomatic (i.e., his hypertension did not exacerbate his COVID-19 symptoms). Therefore, the

---

[6]Ctrs. for Disease Control and Prevention, COVID-19, *Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 3, 2021).

Court finds that Defendant's hypertension, alone, does not establish an extraordinary and compelling reason warranting his release.

Defendant also claims to be obese, which could also increase his likelihood of severe illness should Defendant contract COVID-19.[7] According to the CDC, "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI [body mass index]."[8] However, neither parties' exhibits regarding Defendant's health, nor the presentence investigation report, substantiate Defendant's claim that he is, in fact, obese. Similarly, there is nothing in the record to confirm Defendant's claim that he suffers from breathing problems.

Further, Defendant avers that he has a compromised immune system, which can make one "more likely to get severely ill from COVID-19."[9] While Defendant tested positive for ANA in January 2020, (*see* Docket #42-1 at 3), which could suggest an autoimmune reaction,[10] in July 2020, his doctor noted that Defendant's "ANA has come down over [sic] last several months," and that he would continue to monitor Defendant because Defendant did not have any "symptoms of disease associated with ANA at [that] time."(Docket #41-4 at 1).

The Court also finds that Defendant's prior back, neck, and leg surgeries do not constitute extraordinary and compelling reasons in support of his release. While Defendant's medical records substantiate his claims, the Court finds that such issues do not prevent or limit his ability to

---

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]Mayo Clinic, *ANA Test*, https://www.mayoclinic.org/tests-procedures/ana-test/about/pac-20385204 (last visited May 3, 2021).

administer self-care. In fact, Defendant's doctor indicates that Defendant completed physical therapy for his cervical issues. (Docket #41-3). Further, in June 2020, Defendant's doctor expected Defendant would no longer need a wheelchair but, instead, would be able to bear weight on his ankle. (*Id.*)

Finally, the Court addresses Defendant's claim that he needs to be released to care for his ailing mother. The Court notes that the relevant policy statement does not consider caring for one's ailing parent to be an extraordinary and compelling reason. *See* U.S.S.G. § 1B1.13 n.1.(C); *see also United States v. Goldberg*, Criminal Action No. 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (noting that "the family circumstances that would amount to an extraordinary and compelling reason are strictly circumscribed under the policy statement and do not encompass providing care to elderly parents."). However, as discussed, *infra*, the Court has discretion to deviate from the confines of the policy statement. Nevertheless, the Court finds that Defendant has not established that he is his mother's only potential caregiver. In fact, pursuant to Defendant's presentence investigation report, his mother has three other children as well as several other family members. (Docket #25 at 26–29). Defendant fails to explain why these other family members are unable to care for his mother, leaving him as her sole caretaker. *See United States v. Shovely*, Criminal No. 7:15-CR-00105, 2021 WL 667906, at *3 (W.D. Va. Feb. 19, 2021) (finding that defendant's desire to care for his ailing parents was not an extraordinary and compelling reason justifying his release, even though he was an only child, because he had neither argued nor demonstrated that he was their only available caregiver). In sum, the Court finds that Defendant's desire to take care of his mother is not an extraordinary and compelling reason warranting his release.

Even if Defendant had established an extraordinary and compelling reason, the Court finds that the § 3553(a) factors caution against his compassionate release. Defendant's actions caused bodily injury to and destroyed the property of others. Thus, the Court sentenced Defendant to a term of imprisonment above the mandatory statutory minimum. (Docket #30, #31 at 1). At this juncture, Defendant has over 27 months remaining until his expected release date. Ultimately, the Court determines that granting Defendant's early release would fail to reflect the seriousness of his offense, promote respect for the law, provide just punishment, and afford adequate deterrence.

The Court acknowledges that Defendant has provided evidence suggesting that he is making strides in his personal development. (*See* Docket #42-1 at 6–14, #43 at 5). Yet, the Court notes that Defendant has an extensive criminal history, (*see* Docket #25 at 18–24). Further, the Court has concerns about Defendant being a potential flight risk, as he previously absconded from supervision *after* he committed the aforementioned arsons in Milwaukee. (*Id.* at 24). Defendant's prior conduct militates against his release, especially because he fails to explain how he plans to avoid a life of future criminal activity.

5. **CONCLUSION**

Based on the foregoing, the Court will deny Defendant's motion for compassionate release, (Docket #36). The Court will also grant the Government's motion to seal, (Docket #40).

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release (Docket #36) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the Government's motion to seal (Docket #40) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 3rd day of May, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge